# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 15, 2013

Lyle W. Cayce
Clerk

No. 11–41109

REYNALDO RAMIREZ,

Plaintiff – Appellee

v.

JOSE "TASER JOE" MARTINEZ, Individually,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, GARZA and PRADO, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This is a false arrest and excessive force case following an altercation between Reynaldo Ramirez ("Ramirez") and Deputy Jose "Taser Joe" Martinez ("Martinez") in Jim Wells County, Texas. Martinez appeals the district court's denial of summary judgment based on qualified immunity on Ramirez's 42 U.S.C. § 1983 claims and state-law official immunity on Ramirez's state-law claims. We REVERSE in part and DISMISS in part.

No. 11–41109

# I

Deputy Martinez, a Jim Wells County sheriff's deputy, arrived with other officers at a landscaping business owned by Ramirez to execute a warrant for the arrest of Ramirez's sister-in-law, Diana Flores.[1] Ramirez was not the subject of any warrant. Deputy Martinez entered the business and asked a man and a woman inside whether Flores was present; both said she was not. Martinez then exited the building.

Ramirez arrived at the business while Deputy Martinez and the other officers were still present. A news crew was also present, filming the scene.[2] Ramirez claims the officers had their guns drawn and were pointing the guns at his employees, who were kneeling down. Ramirez approached Deputy Michael Teodecki, another Jim Wells County sheriff's deputy, and asked him to explain what was happening. Teodecki said Martinez was in charge of the operation and did not disclose any other information.

Ramirez located Deputy Martinez and asked Martinez what was happening and why the officers were there. The two exchanged profanities. Martinez yelled, "You shut your mouth or I will take you to jail!" Ramirez simultaneously yelled, "This is my business, ok?" twice. Martinez yelled, "Turn around and put your hands behind your back!" Ramirez did not comply. Martinez grabbed Ramirez's hand and told him to turn around, but Ramirez pulled his arm away. Martinez immediately tased Ramirez in the chest. Ramirez testified that he did not resist after he pulled his arm away.

---

[1] Because this appeal comes to us from the defendant's motion for summary judgment, we construe the summary judgment record in the light most favorable to the non-movant plaintiff. *See Little v. Shell Exploration & Prod. Co.*, 690 F.3d 282, 286 (5th Cir. 2012) (viewing evidence in light most favorable to non-movant parties); *see also* FED. R. CIV. P. 56.

[2] A videotape, captured by the nearby news crew, recorded some of the events underlying Ramirez's claims. The tape's admissibility is not in dispute, though its contents are not necessarily a clear depiction of the events. *See* Part II.B. *infra*.

No. 11–41109

Martinez and several officers forced Ramirez to the ground. While doing so, an officer yelled at Ramirez, "Stop resisting!" and, "Get on the ground!" Ramirez fell to his knees, and the officers forced him to the ground on his stomach and restrained him with handcuffs. Martinez tased Ramirez a second time while lying face-down on the ground in handcuffs. Martinez arrested Ramirez, who was charged with disorderly conduct. The charge was later dismissed.

Ramirez filed suit in the United States District Court for the Southern District of Texas, naming as defendants Jim Wells County and several officers, including Deputy Martinez. Ramirez alleged excessive force, false arrest, and malicious prosecution claims under 42 U.S.C. § 1983 and Texas state law claims, including assault and battery and false arrest and imprisonment. Ramirez voluntarily dismissed all defendants except Martinez.

Martinez moved for summary judgment on the basis of qualified immunity and state-law official immunity. A magistrate judge recommended the district court grant the motion as to Ramirez's § 1983 claim for malicious prosecution but deny the motion as to the remainder of Ramirez's federal claims. The magistrate judge made no recommendation on Ramirez's state-law claims, stating Martinez had not raised these claims in his motion for summary judgment. The district court adopted the magistrate judge's recommendations, but determined Martinez had in fact raised the state-law claims in his motion for summary judgment. The district court nevertheless denied summary judgment on these state-law claims. Thus, the district court granted Martinez's motion for summary judgment as to Ramirez's § 1983 claim for malicious prosecution but denied the motion as to all other claims. Martinez timely appealed.

No. 11–41109

## II

## A

The denial of a motion for summary judgment is ordinarily a non-final, non-appealable order; however, when such a motion is based upon qualified immunity, its denial is a collateral order that is immediately reviewable to the extent the denial was based on an issue of law. *Brown v. Strain*, 663 F.3d 245, 248 (5th Cir. 2011); *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding denial of claim of qualified immunity is appealable to extent it turns on issue of law). When reviewing an interlocutory appeal asserting qualified immunity, we lack the jurisdiction to review the district court's decision that a genuine issue of fact exists. *Brown*, 663 F.3d at 248. Instead, this court's jurisdiction is limited to determining "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Id.* (internal quotation marks omitted). Whether we have appellate jurisdiction to review the district court's disposition of state law matters "is a question of federal, not state, law." *Cantu v. Rocha*, 77 F.3d 795, 803 (5th Cir. 1996). "[O]rders premised on the denial of [official] immunity under Texas state law are appealable in federal court to the same extent as district court orders premised on the denial of federal law immunity." *Id.* at 804; *accord Kinney v. Weaver*, 367 F.3d 337, 346 n.7 (5th Cir. 2004) (en banc) ("[O]rders denying official immunity under Texas law are immediately appealable to the same extent as denials of qualified immunity under federal law."). Therefore, we have jurisdiction to review the district court's denial of summary judgment based on both federal qualified immunity and Texas official immunity only to the extent the denial was based on an issue of law. *Cantu*, 77 F.3d at 804.

We review the district court's denial of summary judgment de novo. *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). Summary judgment

4

No. 11–41109

is appropriate when there is no genuine issue of material fact and the moving party has shown it is entitled to judgment as a matter of law. *Id.* A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact issue is "material" if its resolution could affect the outcome of the action. *Id.* We construe all facts and all reasonable inferences in the light most favorable to Ramirez, the non-moving party. *McFaul*, 684 F.3d at 571.

**B**

Related to the appropriate standard of review is our consideration of *Scott v. Harris*, 550 U.S. 372 (2007). Martinez argues that because there is a videotape partially capturing the altercation at issue, this court should not view the facts in the light most favorable to Ramirez, but instead should rely on the facts established by the video recording and defer to Ramirez's version of any remaining relevant facts. *See generally Scott v. Harris*, 550 U.S. 372 (2007). *Scott* involved a § 1983 claim for excessive force stemming from injuries the plaintiff received when his vehicle crashed while fleeing from a county deputy. *Id.* at 374–76. In reviewing the denial of the deputy's motion for summary judgment based on qualified immunity, the Supreme Court determined the lower courts were wrong to accept the version of facts provided by the plaintiff when that version was contradicted by a videotape of the chase and crash. *Id.* at 378–81. The plaintiff had contended he remained in control of his vehicle at all times while he was driving, slowing down and using his indicator lights for turns at intersections, and he did not pose a threat to any other motorists or pedestrians. *Id.* at 378–79. The videotape, by contrast, showed the plaintiff racing down the road at a very high speed, swerving around more than a dozen other cars, forcing cars onto the shoulder of the road, crossing the double-yellow line, and running multiple red lights. *Id.* at 379. The Court concluded, "When opposing parties tell two different stories, one of which is blatantly contradicted

No. 11–41109

by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

*Scott* does not control our standard of review here because it is distinguishable. There, the Court determined the plaintiff's version of events was so "blatantly contradicted" by the video that "no reasonable jury" could believe him. *Id.* Here, the video does not so blatantly contradict the version of events told by Ramirez that no reasonable jury could believe his version.

The contents of the video are too uncertain to discount Ramirez's version of the events under *Scott*. When the videotape begins, Martinez and Ramirez are already yelling at each other. A struggle ensues, but it is unclear exactly what or who precipitates and what constitutes that struggle. There appear to be about five people involved, but none of their faces are visible on the videotape until Ramirez is on his knees. The tape only establishes that the officers forced Ramirez to the ground, an officer placed a black object against Ramirez's back, and Ramirez screamed twice.

Martinez asserts we must disregard Ramirez's version of events on summary judgment because the video shows Ramirez tried to punch him. Although the video shows the struggle described above, it does not clearly show a punch or every particular element of the altercation. The video does not blatantly contradict Ramirez's version of the facts; accordingly, we view the evidence in the light most favorable to Ramirez.

## III

On the merits, Martinez contends the district court erred in (1) denying qualified immunity on Ramirez's false arrest claim, (2) denying qualified immunity on Ramirez's excessive force claim, and (3) denying official immunity on Ramirez's state law claims.

No. 11–41109

"The doctrine of qualified immunity protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown*, 663 F.3d at 249 (internal quotation marks omitted). To determine whether a public official is entitled to qualified immunity, we decide "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id.* (internal quotation marks omitted) (citing *Pearson v. Callahan*, 555 U.S. 223, 230–33 (2009)). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 351 (5th Cir. 2012) (citation omitted). Once a defendant has raised qualified immunity, the burden shifts to the plaintiff to demonstrate that qualified immunity does not apply. *Id.*

## A

Martinez asserts he is entitled to qualified immunity on Ramirez's false arrest claim because Martinez thought he had probable cause to arrest Ramirez for three separate offenses: resisting arrest, attempted assault, and interference with public duties, all of which are violations of Texas law. In order to make a lawful arrest, an officer must have probable cause to believe the suspect committed a crime. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* (internal quotation marks omitted). If an officer reasonably but mistakenly believes that probable cause exists, he is entitled to qualified immunity. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009).

No. 11–41109

The facts Ramirez alleges do not make out a constitutional violation in the form of false arrest, and therefore we do not reach the issue of whether any violation was clearly established at the time of the conduct. *See Brown*, 663 F.3d at 249. Martinez asserts probable cause existed to believe that Ramirez was resisting arrest.[3] In Texas, the act of resisting can supply probable cause for the arrest itself. For example, in *Padilla v. Mason*, a Texas state court stated:

> When Mason touched Padilla's elbow in an effort to turn or guide her around to face the vehicle, she pulled her arm away, nearly striking Mason in the upper body, and stated, "You will not arrest me." At that point, a reasonable law enforcement officer would have believed that he had probable cause to arrest Padilla for resisting arrest and was authorized to use force to secure the arrest.

169 S.W.3d 493, 504 (Tex. App.—El Paso 2005, pet. denied).

Ramirez stated in his deposition that he pulled his arm out of Martinez's grasp as Martinez was attempting to arrest him. He stated, "First of all, he grabbed my—grabbed my hand, told me to turn around, and I didn't. . . . I don't think I pushed him. But I did—I did snug back, you know." The great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest. *See Pumphrey v. State*, 245 S.W.3d 85, 89 (Tex. App.—Texarkana 2008, pet. ref'd) (footnote omitted) ("[W]e hold that the statute authorizes a conviction for resisting arrest when the defendant actively pulls against an officer's established grasp of the defendant during an arrest attempt."); *Torres v. State*, 103 S.W.3d 623, 627 (Tex. App.—San Antonio 2003, no pet.) ("[A] person who uses force in order to shake off an officer's detaining

---

[3] The offense of Resisting Arrest is defined in relevant part as follows:
(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.
(b) It is no defense to prosecution under this section that the arrest or search was unlawful.
Tex. Penal Code Ann. § 38.03 (West 2009).

grip, whether by pushing or pulling, may be guilty of resisting arrest under section 38.03."); *Bryant v. State*, 923 S.W.2d 199, 207 (Tex. App.—Waco 1996, pet. ref'd) (emphasis removed) ("[P]ulling one's arm in an attempt to shake off an officer's detaining grip could amount to force against that officer [under section 38.03]."); *Hopper v. State*, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.) (holding "a person who uses force in order to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under Section 38.03" and explicitly disavowing *Raymond v. State*, 640 S.W.2d 678, 679 (Tex. App.—El Paso 1982, pet. ref'd), which held arrestee's act of pulling away, as opposed to pushing toward, officer in shaking off officer's grip insufficient to constitute resisting arrest).[4]   Therefore, under Texas law Deputy Martinez could have reasonably concluded that Ramirez committed the offense of resisting arrest when Ramirez pulled his arm away from Deputy Martinez's grasp.

Ramirez alternatively asserts that any resistance was justified by Texas Penal Code § 9.31(c), which states:

> The use of force to resist an arrest or search is justified:
>
> (1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and
>
> (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

---

[4] One Texas court held pulling out of an officer's grasp is insufficient to constitute resisting arrest. *Mayfield v. State*, 758 S.W.2d 371, 374 (Tex. App.—Amarillo 1988, no writ) (citing *Young v. State*, 622 S.W.2d 99, 100–01 (Tex. Crim. App. 1981)) ("The evidence is insufficient to establish resisting arrest where the accused merely pulls away from the arresting officer.").  The Texas Court of Criminal Appeals case *Mayfield* relied on, however, dealt with an arrestee pulling away from an officer after being arrested, and held, "The arrest was complete . . . and thus the later violent actions by appellant could not have been in resistance to the arrest." *Young*, 622 S.W.2d at 100.

No. 11–41109

That is, Ramirez asserts any resistance was offered in response to Martinez's use of greater force than necessary in the form of the first tasing. The problem with this line of reasoning is that it could only possibly apply to the ensuing struggle, as Ramirez stated in his deposition that he pulled his arm out of Martinez's grasp before any tasing began. As discussed, the act of pulling his arm out of Martinez's grasp is enough, standing alone, to constitute resisting arrest, so it matters not whether the further resistance was justified under § 9.31(c) or whether a reasonable officer on the scene would have known such resistance was justified. Deputy Martinez had probable cause to arrest Ramirez based on the fact that Ramirez pulled his arm out of Martinez's grasp; therefore, the arrest was supported by probable cause.

Because we hold that under Ramirez's version of the facts a reasonable officer at the scene would have thought he had probable cause to arrest Ramirez for resisting arrest, we do not reach Deputy Martinez's assertion that he had probable cause to arrest Ramirez for attempted assault and interference with public duties. As we held in *Wells v. Bonner*, "[i]f there was probable cause for any of the charges made—here either disorderly conduct or resisting a search—then the *arrest* was supported by probable cause, and the claim for false arrest fails." 45 F.3d 90, 95 (5th Cir. 1995). Because there was no false arrest, no constitutional violation occurred, and, accordingly, we have no occasion to reach the part of the qualified immunity analysis that asks whether the law was clearly established. *See Brown*, 663 F.3d at 249. Thus, the district court erred by denying Deputy Martinez qualified immunity on Ramirez's false arrest claim.

**B**

To establish Martinez violated his constitutional right to be free from excessive force, Ramirez must show: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th

No. 11–41109

Cir. 2011) (internal quotation marks omitted). If he can establish a violation, then we determine whether the law was clearly established at the time of Martinez's conduct. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). Whether the force was reasonable under the Fourth Amendment is determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (internal quotation mark omitted). In determining whether a use of force was reasonable, we look to the totality of the circumstances, *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012), giving "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" (the "*Graham* factors"). *Graham v. Conner*, 490 U.S. 386, 396 (1989).

First, Ramirez must assert an injury. In his complaint, Ramirez alleges, "As a result of the Defendant Martinez's actions," Ramirez "sustained numerous injuries to his body, including, but not limited to, contusions and abrasions to his body, and burn marks from the taser probes." Martinez does not challenge these allegations of injury and causation on appeal. Therefore, we need determine only whether Ramirez succeeds in showing Martinez's use of force was clearly excessive to the need and objectively unreasonable.

Martinez asserts his conduct was not excessive to the force needed nor objectively unreasonable. We have not addressed a fact pattern precisely on point, but we have held the use of certain force after an arrestee has been restrained and handcuffed is excessive and unreasonable. *Bush*, 513 F.3d at 501–02. In *Bush*, we held a police officer used excessive force that was objectively unreasonable and in violation of clearly established law when he forcefully slammed a suspect's face into a vehicle after subduing her and placing her in handcuffs. *Id.* On the other hand, we recently held the use of a taser was

11

not excessive where the arrestee was resisting arrest and the officers ceased use of the taser once the arrestee was handcuffed and subdued. *Poole v. City of Shreveport*, 691 F.3d 624, 626 (5th Cir. 2012).

Turning to the case on appeal, we hold Ramirez's version of the facts as supported by the summary judgment record is sufficient to establish under the *Graham* factors that Martinez used excessive force. *See Haggerty v. Tex. State Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) ("In an interlocutory appeal in which the defendant asserts qualified immunity, to the extent that the district court found that genuine factual disputes exist, we accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true."). First, we consider the severity of the crime in question. Although Ramirez pulled his arm out of Martinez's grasp, the district court found there was a genuine issue of material fact as to any subsequent resistance up until Martinez tased him after subduing and handcuffing him. Therefore, accepting Ramirez's version of the facts as true, the first *Graham* factor weighs slightly against Martinez. Second, a reasonable officer could not have concluded Ramirez posed an immediate threat to the safety of the officers by questioning their presence at his place of business or laying on the ground in handcuffs. Pulling his arm out of Martinez's grasp, without more, is insufficient to find an immediate threat to the safety of the officers. Third, as in the first *Graham* factor, according to Ramirez the only resistance he offered was pulling his arm out of Martinez's grasp; he alleges several officers then forced him to the ground without resistance on his part. Viewing the facts of this record in the light most favorable to Ramirez, any reasonable officer in Martinez's place would have recognized Martinez's conduct was objectively unreasonable under the *Graham* factors.[5] The district court

---

[5] The dissent is mistaken not to take Ramirez's version of the facts as true when applying *Saucier v. Katz* to the facts here. 533 U.S. 194 (2001). The dissent implies the majority intentionally left out of the analysis Martinez's assertion that he "interpreted

properly determined that a reasonable officer would view Martinez's use of force under Ramirez's version of the facts to be clearly excessive and objectively unreasonable under the circumstances. Thus, a jury must determine the facts at trial.

Next, the district court did not misapply the law in holding Deputy Martinez's alleged excessive and unreasonable force under Ramirez's version of the events violated clearly established law. We have explained the 'clearly established' prong as follows:

> Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be "on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The central concept is that of "fair warning": The law can be clearly established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740, 122 S.Ct. 2508 (internal quotation marks omitted).

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc). In *Newman v. Guedry*, we addressed whether the law on the use of tasers was clearly established at the time of an event that occurred *before* the incident between Ramirez and Martinez:

---

Ramirez's 'pulling away' as raising his arm in order to attempt to punch him, and that is why Martinez tased the arrestee." *Ante* at 3. Martinez did not testify he interpreted Ramirez's pulling away as raising his arm for a punch; rather, Martinez testified Ramirez pulled his arm away and *put his hand behind his back*. Martinez testified he grasped and pulled on Ramirez's shirt, and only then did Ramirez attempt to punch him. (As discussed above, Martinez's heavy reliance in his briefing on the unclear video to prove the fact of the punch is misplaced. *See* Part II.B *supra*.) It is not the *purpose* of Ramirez's allegedly raised arm that is in dispute, but rather it is whether Ramirez raised his arm *at all*. *Cf. Saucier*, 533 U.S. at 198 ("It seems agreed that respondent placed his feet somewhere on the outside of the van, perhaps the bumper, but there is a dispute whether he did so to resist."). In *Saucier*, the dispute as to resistance centered on the subjective intent of the arrestee, so a reasonable officer could have thought the arrestee would "fight back." *Id.* at 205. Here, without the alleged raised arm a reasonable officer could not have even mistakenly thought Ramirez's purpose was to punch Martinez.

No. 11–41109

> Guedry contends that he had no reasonable warning that tasing Newman multiple times violated Newman's constitutional rights, because there was then no binding caselaw on the appropriate use of tasers.  Lawfulness of force, however, does not depend on the precise instrument used to apply it.  Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.

703 F.3d 757, 763–64 (5th Cir. 2012) (footnotes omitted).  Further, in *Bush* we held an officer used excessive and unreasonable force when he forcefully slammed an arrestee's face into a vehicle when the arrestee was handcuffed and subdued.  *Bush*, 513 F.3d at 501.  Here, Ramirez alleged he posed no threat to the officers and yet was tased twice, including once after he was handcuffed and subdued while lying face down on the ground, in violation of clearly established law.  Therefore, the district court did not err in denying Martinez qualified immunity on Ramirez's claim for excessive force.  Ramirez's version of the facts, which the district court found supported by the summary judgment record, does not indicate the district court committed a "purely legal" error, *Kinney*, 367 F.3d at 347, and we lack jurisdiction to review the district court's finding "that a genuine issue of fact exists regarding whether [Martinez] did, in fact, engage in . . . conduct [that was objectively unreasonable in light of clearly established law]." *Id.* at 346.

## IV

Deputy Martinez moved for summary judgment on Ramirez's state-law claims for assault and battery and false arrest and imprisonment on the basis of official immunity.  Official immunity is an affirmative defense that protects government employees from personal liability for certain actions taken in the course of their employment. *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002).  A government employee is entitled to official immunity for "(1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith." *Id.* at

14

461.   A government employee must "conclusively establish" each of these elements in order to be entitled to summary judgment on the basis of official immunity. *Id.*

First, "an arrest is a discretionary act." *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 350 n.17 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Second, Ramirez does not dispute the arrest was within the scope of Martinez's authority. *See Telthorster*, 92 S.W.3d at 461 (treating elements of official immunity as "conclusively established" when they were not disputed by the parties). Third, to establish good faith, an officer must show that "a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Telthorster*, 92 S.W.3d at 465. Good faith is to be measured "against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997).

The factual basis for Ramirez's claim for false arrest and imprisonment is the same as the basis for his § 1983 claim for false arrest. For the reasons discussed above, a reasonable officer acting in good faith could have concluded probable cause existed for resisting arrest based on Ramirez's pulling his arm out of Martinez's grasp. Therefore, Martinez is entitled to official immunity on Ramirez's claim for false arrest and imprisonment. The district court erred by denying Martinez official immunity for this claim.

The factual basis for Ramirez's claim for assault and battery is the same as the basis for his § 1983 claim for excessive force. As discussed above, no reasonable officer acting in good faith could have believed Deputy Martinez's specific conduct was justified based on Ramirez's version of the facts. Therefore, the district court correctly denied Martinez's motion for summary judgment on the basis of official immunity for this claim.

No. 11–41109

**V**

In summary, we hold Deputy Martinez is entitled to qualified immunity on Ramirez's false arrest claim but not on Ramirez's excessive force claim. In addition, Deputy Martinez is entitled to official immunity on Ramirez's state-law false arrest and imprisonment claim but not on Ramirez's state-law assault and battery claim. For the reasons we have stated in this opinion, we REVERSE in part and DISMISS in part.

No. 11-41109

EDITH H. JONES, Circuit Judge, dissenting.

With respect to my colleagues, I must dissent to the extent the majority opinion denies qualified immunity to Officer Ramirez for his alleged use of unconstitutionally excessive force against arrestee Martinez. Between this opinion and another recently issued in this court, *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012), we seem to have departed from the Supreme Court's clear and repeated statements regarding qualified immunity for law enforcement officers.

In brief, the Supreme Court has held that given the perilous circumstances under which much law enforcement work is carried out and the inevitable need for split-second decisions, a plaintiff must overcome two levels of unreasonableness to get to the jury on a claim for a Fourth Amendment violation. *Saucier v. Katz*, 533 U.S. 194, 204–05,121 S. Ct. 2151, 2158 (2001); *Anderson v. Creighton*, 483 U.S. 635, 640–44, 107 S. Ct. 3034, 3039–41 (1987). The plaintiff must first create a genuine issue of material fact that the force used under the circumstances was objectively unreasonable. *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989). He or she must additionally show a genuine, material fact issue that the law was so "clear," under reasonably analogous circumstances confronted by the officer, that "no reasonable officer" would have used that quantum of force. *Brosseau v. Haugen*, 543 U.S. 194, 201, 125 S. Ct. 596, 600 (2004) (reversing the Ninth Circuit and awarding qualified immunity following police shooting of suspect). The standard thus shields all but the plainly incompetent officers or those who knowingly violate the law. *Anderson*, 483 U.S. at 638, 107 S. Ct. at 3038. The standard also explicitly operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force.'" *Saucier*, 533 U. S. at 206, 121 S. Ct. at 2158 (citation omitted).

17

What this court's recent decisions seem to suggest, however, is that officers can be liable even if they are well within that hazy border. *Saucier* explains why this is wrong:

> If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.
>
> . . .
>
> The concern of the [qualified] immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. . . . An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.
>
> . . .
>
> *Graham* and *Anderson* refute the excessive force/probable cause distinction on which much of respondent's position seems to depend. The deference owed officers facing suits for alleged excessive force is not different in some qualitative respect from the probable-cause inquiry in *Anderson*. . . . The same analysis is applicable in excessive force cases, where in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable.

*Id.* at 205–06, 121 S. Ct. at 2158–59. In *Saucier,* the Ninth Circuit was reversed, and qualified immunity held appropriate as a matter of law, where police roughly removed the defendant, a suspect, from the scene of a U.S. Vice Presidential speech, jostled his leg that had a brace on it, and shoved him into a trailer for awhile. The Court held that any mistake the officers made was, under the circumstances, reasonable, despite the fact that, as it earlier noted, "there is a dispute whether he did so to resist." *Id.* at 198, 121 S. Ct. at 2154.

Compare *Saucier* to the facts at issue here. The officers arrived at Ramirez's landscaping business to serve an arrest warrant on his sister-in-law. When Ramirez came on the scene, he began arguing with Officer Martinez.

No. 11-41109

Martinez ordered him to turn around and submit to handcuffing. As the majority opinion initially describes the summary judgment evidence,

> Ramirez did not comply. Martinez grabbed Ramirez's hand and told him to turn around, but Ramirez pulled his arm away. Martinez immediately tased Ramirez in the chest. Ramirez testified that he did not resist after he pulled his arm away.

Later on, the majority concludes that because Ramirez pulled his arm away, Officer Martinez could reasonably believe that he was resisting arrest in violation of Texas law. The majority opinion barely notes that Martinez interpreted Ramirez's "pulling away" as raising his arm in order to attempt to punch him, and that is why Martinez tased the arrestee. Given Ramirez's heated reaction and refusal to comply with Martinez's order, Martinez could have "reasonably, but mistakenly, believed that [the] suspect was likely to fight back" and Martinez "would be justified in using more force than in fact was needed." *Saucier*, 533 U.S. at 205, 121 S. Ct. at 2158.

The possible distinction between this case and *Saucier* is that Ramirez was tased once more as he allegedly lay on the ground while handcuffed. Fortunately, the majority does not treat this case as an indictment of the use of tasers, but rather an incident that must be considered in totality through the lens of Ramirez's self-serving testimony.[1] But as I have noted, *Saucier* found qualified immunity appropriate even though there was a factual dispute concerning the suspect's degree of resistance.

The totality of circumstances in *Saucier* furnishes strong support for granting qualified immunity as a matter of law here. First, there was reasonable cause to believe Ramirez violated Texas law. Second, Ramirez

---

[1] This court has not often or in detail discussed the use of tasers to subdue suspects. Although the decision is inapposite to this case, *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004), indicates that in some confrontations the use of a taser may well be preferable in effecting arrests because it reduces the uncertainties and dangers surrounding hands-on tactics.

19

admits he resisted handcuffing and pulled his arm away, and thus actively resisted arrest. Third, *Saucier* reiterates that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof." *Id.* at 208, 121 S. Ct. at 2160 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872). Fourth, as in *Saucier*, the degree of force used here could not have been extreme; the majority opinion refers only to Ramirez's claims of cuts and bruises, taser burn marks, and temporary pain. Finally, the entire confrontation lasted about a half minute and included scuffling after Ramirez was on the ground. Officer Martinez had to react instinctively to a "tense, uncertain and rapidly evolving" situation. *Graham*, 490 U.S. at 397, 109 S. Ct. at 1872.

Balancing all these circumstances, a jury could not find that no reasonable officer would have tased Ramirez two times. Even if Officer Martinez made a mistake on the second tasing, *Saucier*, echoing the line of consistent Supreme Court precedent, should shield his reasonable but mistaken conduct from suit as well as liability.[2]

The majority's principal authorities are *Newman*, *supra*, and *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008). *Newman*, as I have said, appears to suffer from flawed analysis like this opinion. *Bush*, however, is inapposite because it represents a far more extreme alleged use of force. The Supreme Court has cautioned against applying the tests for excessive force and qualified immunity at too high a level of generality. *Brosseau*, 543 U.S. at 198, 125 S. Ct at 599. The plaintiff in *Bush* was a female detained for simple battery and resisting arrest, whose face was allegedly shoved into the rear window of an auto after she had been handcuffed. Unlike Martinez, she suffered injuries to her face, teeth,

[2] From this discussion, it follows that I would also grant immunity from Ramirez's state law claims because Texas law parallels the federal standards.

and jaw and incurred sizable medical expenses as a result.  There is no one-size fits all standard requiring resisting-arrest excessive force claims to be tried.

Although I deplore official misconduct as much as does the majority, the bars to holding law enforcement officers personally liable for damages are necessarily and properly high.  Taking this case to a jury, in my view, significantly erodes the protection of qualified immunity.  I respectfully dissent.