# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 6, 2013

No. 12-41394
Summary Calendar

Lyle W. Cayce
Clerk

GEORGE BERGIN,

Plaintiff – Appellant

v.

LEWIS B. TATUM,

Defendant – Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:11-CV-1

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Appellant George Bergin appeals the district court's grant of summary judgment on qualified immunity grounds for defendant Lewis B. Tatum. We AFFIRM.

## FACTS AND PROCEDURAL HISTORY

At around 5:30 p.m. on November 19, 2009, Kimberly Simpson, a City of Sulphur Springs police officer, was dispatched to an area of Highway 19 in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-41394

Sulfur Springs, located in Hopkins County, Texas, where ten to thirteen head of cattle were roaming. The cattle were not branded or tagged. The police department contacted approximately six potential owners of the cattle. According to Simpson, Carolyn Bergin arrived on the scene and stated that the cattle did not belong to her brother, appellant George Bergin ("Bergin"). Bergin disputes that Carolyn Bergin made this statement, but admits that "I don't know what she said to the police. I wasn't there at the time."

Simpson ran the cattle into a wooded area, but a few hours later, she received a call that they had wandered back to the area around the highway. She advised dispatch to send Rocky Rivera, a Hopkins County impound officer, to round up and impound the cattle. Rivera arrived on the scene and transported four head of cattle to his impound lot. During the impound process, one of the cows ran into a pool and drowned, and three remained at large.

The next day, November 20, 2009, George Bergin called Rivera asking to inspect the cattle. Rivera was out of town, but gave Bergin directions to the impound lot and told him that the impound fee was $950.[1] Rivera told Bergin that "if the cattle were his, he must pay the impound fee before he could take the cattle off of the impound lot." Later that day, Rivera returned to the impound lot and found that the cattle were gone. Bergin admitted that he had taken his trailer to the lot and took the cattle.

Rivera called the Hopkins County Sheriff's Office to report the missing cattle. Criminal investigator Lewis B. Tatum interviewed Rivera, who said he suspected that Bergin was responsible for the missing cattle. Rivera also told Tatum about his conversations with Bergin. Tatum additionally interviewed Officer Simpson, who reported Carolyn Bergin's alleged statement that George Bergin did not own the cattle.

---

[1] According to Officer Simpson's incident report, Rivera told Bergin the fee would be $675.

2

No. 12-41394

On November 24, 2009, Tatum called Bergin's home, but Bergin's mother said that Bergin was too busy to speak. On November 30, Tatum spoke to Bergin by telephone and Bergin admitted that he took the cattle from the impound lot without paying the fee. Bergin also said that he was too busy to meet with Tatum.

On December 2, 2009, Tatum filed a complaint against Bergin for Theft of Livestock in violation of Texas Penal Code 31.03. The complaint read, in relevant part, that Tatum

> believe[s] that on or about the 20th day of November, 2009 . . . George Bergin, hereinafter styled Defendant, did then and there unlawfully appropriate, by acquiring and otherwise exercising control over, property, to-wit: less than ten head of cattle, of the value of less than $20,000, from Rogue Rivera, the owner thereof, and with intent to deprive the owner of the property.

> My reason for believing that the above Defendant committed the above offense is based upon evidence which I obtained in my official capacity as a peace officer during my investigation of this offense. Further, cattle impounded by Sulphur Springs Police Department, after having been disclaimed by [Carolyn] Bergin, acting as agent for defendant, defendant removed cattle from the impound pens where Rogue Rivera placed the cattle. Further, defendant admitted to Investigator Lewis Tatum that defendant removed the cattle.

That same day, a Hopkins County Justice of the Peace found that probable cause existed to arrest Bergin for theft of livestock and signed a warrant for his arrest. Bergin was arrested and held at the Hopkins County Jail for approximately 18 hours. After the impound fee was paid, apparently by one of Bergin's defense attorneys on Bergin's behalf, the State dismissed the charges against him.

On January 3, 2011, Bergin filed suit against Simpson, Tatum, and Hopkins County. The complaint alleged that Simpson and Tatum made materially false representations, and claimed violation of Bergin's Fourteenth

No. 12-41394

Amendment right to due process as well as a state claim of malicious prosecution. Simpson and Hopkins County were subsequently dismissed from the suit at the agreement of all parties, and the remaining parties agreed that the case would be tried before a magistrate judge.

Tatum moved for summary judgment. In deposition testimony, Tatum admitted that he knew the cattle did not belong to Rivera, but that he did not know at the time the complaint was filed—or at the time of the deposition—that the cattle belonged to Bergin. However, when the complaint was filed, Tatum knew that Bergin claimed ownership of the cattle. He stated that the prosecutor had relied on the facts he laid out in the complaint to charge Bergin with theft. Tatum provided his understanding that "if no one provides ownership of cows that are impounded, the impound officer can at some point sell those cattle as if he owned them."

Rivera submitted an affidavit stating that he was "the person designated by the Sheriff of Hopkins County to sell any cattle that I impound when the owner is not identified or when the impound fee is not paid." Rivera relayed his understanding that after cattle are impounded, if "an owner is never determined or located . . . a person designated by the Sheriff[] has title over the animal and can sell the animal at a public auction as if they are the owner" and that if an owner is "determined or located, he can retrieve the impounded cattle only after paying the impound fee."

The magistrate judge granted summary judgment to Tatum on November 14, 2012, on qualified immunity grounds. The magistrate judge found that even if Tatum's affidavit contained misstatements, a reasonable officer could nonetheless find that the affidavit established probable cause without the misstatements, because Bergin "had no right to take the cattle without paying the impound fee" and "Rivera had a right to possess the cattle until that fee was taken." With regard to Bergin's state law claim of malicious prosecution, the

4

No. 12-41394

magistrate judge found both that there was no evidence that Tatum acted with malice against Bergin, and that Tatum had official immunity under Texas law for the same reasons he had qualified immunity under federal law.

## DISCUSSION

### 1.    Section 1983 Due Process Claim

Tatum argues that his Fourteenth Amendment right to due process was violated when Tatum placed "material misstatements and omissions" before a Hopkins County justice of the peace, and that his affidavit was insufficient to establish probable cause to arrest Bergin for theft of livestock.

Tatum has asserted qualified immunity in response to Bergin's due process claim.  To assess qualified immunity, "we decide (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (internal quotation marks omitted).

Bergin argues that Tatum did not have probable cause to arrest Bergin for theft of livestock, for two reasons: first, because the complaint misidentified Rivera as the owner of the cattle, and second, because Rivera did not have statutory authority to impound the cattle.  The summary judgment record does arguably indicate at least a genuine issue of fact as to whether Tatum made false statements in the complaint, including that Rivera was "the owner" of the cattle and that Carolyn Bergin was "acting as agent for" George Bergin. Misstatements in preparing an affidavit for a plaintiff's arrest can form the basis of a § 1983 claim where "the state had to concede that the search or seizure was undertaken without probable cause." *Jureczki v. City of Seabrook, Tex.*, 760 F.2d 666, 668–69 (5th Cir. 1989); *see also Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 423 (5th Cir. 2013) (holding that "the deficiency of any one piece of evidence used to demonstrate probable cause does not, on its own, mean that probable cause

did not exist"); *United States v. Privette*, 947 F.2d 1259, 1260 (5th Cir. 1991) ("Because the affidavit supports a finding of probable cause when read without the challenged statements, the trial court did not err in denying [the defendant's] motion to suppress.").

Here, we cannot say that—even without the allegedly false statements—a reasonable officer in Tatum's position would have lacked probable cause to arrest Bergin. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Ramirez*, 716 F.3d at 375 (emphasis omitted). The inquiry focuses on the validity of the arrest, not the validity of each individual charge made during the course of the arrest. *See Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001).

A person commits theft under Texas law if they "unlawfully appropriate[] property with intent to deprive the owner of property." Tex. Penal Code § 31.03(a). Under Texas law, "[e]ven a true owner, who takes from one who is lawfully in possession of property, may be guilty of theft." *Hudiberg Chevrolet, Inc. v. Globe Indem. Co.*, 394 S.W.2d 792, 795 (Tex. 1965) ("There was a theft when a mortgagor took possession of two horses he had placed in the possession of another as security for a debt, and when the owner of a pistol took it from his pledgee. There was a theft when an owner of a watch fraudulently took it from the possession of the man holding it as security for repairs. There may be a theft, when, as here, the ownership is in one person, and the possession is in another.").

The Texas Agriculture Code provides that a sheriff, or the sheriff's designee, can impound an "estray" (meaning "stray livestock," *see* Tex. Agric. Code § 142.001 ("Definitions")) if, *inter alia*, "the owner of the estray is unknown." Texas Agric. Code Ann. § 142.009(a)(1). After a certain amount of

time has passed without anyone claiming ownership over the livestock, the county acquires title, considered "vested in the sheriff or the sheriff's designee" for purpose of sale at auction. *Id.* at § 142.013(a). The owner of an estray "may recover possession . . . at any time before the estray is sold" if, *inter alia*, "the owner has provided the . . . sheriff's designee with an affidavit of ownership," "the sheriff's designee has approved the affidavit of ownership," and "the owner has paid all estray handling expenses." *Id.* at § 142.010(a). In addition, the sheriff is entitled to claim "a collection fee" in an amount "determined by the sheriff," and the owner may only challenge the amount of that fee by petitioning the justice court. *Id.*

There is no dispute in the record that Bergin took the cattle from the impound lot without permission, without establishing any proof of ownership, and without paying the impound fee or any expenses. Tatum was aware of these facts, and he was also aware that Bergin's sister had allegedly disclaimed Bergin's ownership; that Rivera had impounded the cattle pursuant to his official duties; and that Bergin had asked Rivera to "inspect" the cattle to determine if they were his. Because Texas law does not allow a purported owner to recover impounded livestock without proof of ownership and other requirements, we cannot say that a reasonable officer in Tatum's position could not have concluded that Bergin took the cattle without legal authority.

Bergin also argues, for the first time on appeal, that Rivera did not have statutory authority as Hopkins County's impound officer because Simpson, who instructed Rivera to impound the cattle, worked for the city police department rather than the county sheriff. Bergin has waived this argument by not asserting it before the district court. *See Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("We may only affirm an order granting summary judgment on a basis that was presented to the district court," because

"arguments not raised before the district court are waived and cannot be raised for the first time on appeal.").

## 2.    Malicious Prosecution

Bergin's claim for malicious prosecution under Texas law requires proof that, *inter alia*, Tatum lacked probable cause to initiate the prosecution and that Tatum acted with malice.  *See Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006). "Texas recognizes an 'official immunity' defense to state law claims such as malicious prosecution."  *Crostley*, 717 F.3d at 424 (citing *Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)). "Texas law of official immunity is substantially the same as federal qualified immunity."  *Id.* (internal quotation marks and citation omitted).    Where officers "reasonably believed they had probable cause to proceed against" a plaintiff under the federal qualified immunity analysis, the plaintiff "cannot assert a claim for malicious prosecution" under Texas law.  *Id.* (quoting *Hart v. O'Brien*, 127 F.3d 424, 452 (5th Cir. 1997)).  Because we conclude that a reasonable officer in Tatum's position could have concluded that probable cause existed, we therefore hold that Tatum is entitled to official immunity under Texas law.

## CONCLUSION

For the foregoing reasons, we AFFIRM the magistrate judge's grant of summary judgment to defendant.