# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2017

Lyle W. Cayce
Clerk

No. 16-50391

SHAVONDA BAILEY, as Next Friend of K.A. and P.A.; VIVIAN LAMPKINS, as Next Friend of J.L.; BELINDA CARRANCO, as Next Friend of Z.A.; BRANDIE OLIVER, as Next Friend of A.O.; CHRISTINE OWENS, as Next Friend of M.O.,

        Plaintiffs - Appellants

v.

NATHAN PRESTON, Individually; VIDAL DIAZ, Individually; MICHAEL FLETCHER, Individually; FRANCISCO GALVAN, Individually; MATTHEW FLORES, Individually; AUBREY PLAUCHE, Individually; MATTHEW QUINTANILLA, Individually; ROBERT TAMEZ, Individually; PAUL TRIGO, Individually,

        Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:13-CV-700

Before WIENER, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

        Pierre Abernathy died after a struggle with several San Antonio police officers. The mothers of his children filed suit against the officers (1) under 42

---

       * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50391

U.S.C. § 1983 for excessive force and for failure to intervene to prevent the use of excessive force, and (2) under Texas state law for assault and battery. The district court granted the officers' motion for summary judgment on the basis of qualified immunity and dismissed the claims against them. We affirm.

## I.
### FACTS AND PROCEEDINGS

In August 2011, after leading San Antonio police officers on a 14.4-mile pursuit by car, Abernathy pulled over in front of the house where his mother and sister lived. Abernathy, a 5'11", 240-pound male with paranoid schizophrenia, initially complied with the officers' directives to exit the car, put his hands in the air, and get on the ground, at which point the officers were able to place handcuffs on one of Abernathy's hands.

Shortly thereafter, however, Abernathy began to resist and pushed himself up off the ground to a standing position. A struggle ensued, and Abernathy was tased at least five times, struck with "asp" batons four times, punched, kicked, and bitten by a K9 dog. Several officers reported that they repeatedly tried to handcuff Abernathy's other hand but that he continued to resist. The uncontroverted evidence reflects that, once the officers were finally able to handcuff Abernathy, they no longer used any force against him.[1]

Abernathy, who officers said was initially breathing after the struggle, stopped breathing. Emergency Medical Services personnel transported Abernathy to a hospital, where staff pronounced him dead shortly after his arrival. The autopsy concluded that Abernathy's "manner of death" was a

---

[1] One officer had a camera on his dashboard recording audio and video, but almost all of the struggle took place off-camera: Abernathy is seen on video only once after getting out of his car, running across the frame followed by a dog and six officers. The camera's microphone shut off for nearly two minutes and thus failed to capture the audio of most of the struggle.

No. 16-50391

homicide and that he "died as a result of the combined effects of intoxication with cocaine, a prolonged struggle, and a cardiomyopathy (an enlarged heart)."

The mothers of Abernathy's children sued the officers on scene in their individual capacities, asserting claims under 42 U.S.C. § 1983 for excessive force and for failure to intervene to prevent the use of excessive force.  They also brought claims under Texas state law for assault and battery. The officers moved for a summary judgment of dismissal of all claims, asserting, *inter alia*, that they were entitled to qualified immunity on the plaintiffs' § 1983 claim for use of excessive force. The district court granted the officers' motion and dismissed the plaintiffs' claims. The court concluded that "the defendants deployed force that was neither clearly excessive nor clearly unreasonable." The plaintiffs timely appealed, claiming only that the district court erred in granting summary judgment on the plaintiffs' § 1983 claim for use of excessive force.[2]

## II.
### STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment on the basis of qualified immunity and apply the same standards as the district court.[3] "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is

---

[2] Because the appellants do not raise the failure-to-intervene claim and do not adequately address their assault-and-battery claim on appeal, the only issue before us is whether the district court erred in granting summary judgment on their § 1983 claim for use of excessive force. *See Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) ("[F]ailure to advance arguments in the body of the appellant's brief, even when those issues were referenced in the Statement of Issues section, resulted in waiver of those arguments."); *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 561 (5th Cir. 1997); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993); *see also* FED. R. APP. P. 28(a).

[3] *Curtis v. Anthony*, 710 F.3d 587, 593 (5th Cir. 2013) (per curiam); *Davila v. United States*, 713 F.3d 248, 257 (5th Cir. 2013).

No. 16-50391

entitled to judgment as a matter of law."[4] We construe all facts and inferences in the light most favorable to the nonmoving party.[5] "In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence."[6]

## III.
### ANALYSIS

"To state a claim under § 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."[7] "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."[8] When a defendant raises the qualified-immunity defense, the plaintiff has the burden of demonstrating the inapplicability of that defense.[9] In resolving questions of qualified immunity at summary judgment, we engage in a two-pronged inquiry: (1) whether the facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a federal right; and (2) "whether the right in question was 'clearly established' at the time of the violation."[10] Like the district court, we have the discretion to decide which prong of the qualified-immunity analysis to address first.[11] "[Q]ualified

---

[4] *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004); *see* FED. R. CIV. P. 56.

[5] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[6] *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam) (internal quotation marks omitted).

[7] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[8] *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

[9] *Atteberry*, 430 F.3d at 253.

[10] *Tolan v. Cotton*, 134 S. Ct. 1861, 1865–66 (2014) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

[11] *Morgan*, 659 F.3d at 371.

immunity may be granted without deciding the first prong. Deciding the second prong first is often advisable[.]"[12] We choose to begin with the second prong of the qualified-immunity analysis.

The instant defendants are entitled to qualified immunity if their use of force was "objectively reasonable in light of clearly established law at the time the challenged conduct occurred."[13] "[W]hile the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene."[14] "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[15] There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate."[16] "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact."[17]

In their brief, the appellants failed to address whether the officers' force was excessive in light of clearly established law.[18] When pressed at oral

---

[12] *Newman v. Guedry*, 703 F.3d 757, 766 (5th Cir. 2012) (citation omitted).

[13] *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).

[14] *Id.* at 502; *see also Poole*, 691 F.3d at 627–28; *Deville*, 567 F.3d at 169.

[15] *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope*, 536 U.S. at 740).

[16] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[17] *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

[18] In an "obvious case," the excessive-force factors outlined in *Graham v. Connor*, 490 U.S. 386 (1989), "can 'clearly establish' the answer, even without a body of relevant case law." *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam); *see also Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017); *Newman*, 703 F.3d at 764. This case, however, is not an obvious

argument, counsel for appellants cited *Ramirez v. Martinez* as demonstrating that in 2011 the law was clearly established that the force the officers used in this case was excessive.[19] But *Ramirez* is distinguishable. The plaintiff in *Ramirez* alleged that he "posed no threat to the officers and yet was tased twice, including once after he was handcuffed and subdued while lying face down on the ground," and the district court found that the plaintiff's account was supported by the summary-judgment record.[20] In *Ramirez*, this court emphasized that, although our circuit has "not addressed a fact pattern precisely on point, . . . we have held the use of certain force *after* an arrestee has been restrained and handcuffed is excessive and unreasonable."[21]

The *Ramirez* panel concluded that the officer's alleged conduct violated clearly established law. It relied on (1) *Newman v. Guedry*, in which another panel of this court had explained in 2012 that the "[l]awfulness of force . . . does not depend on the precise instrument used to apply it,"[22] and (2) *Bush v. Strain*, in which "we held an officer used excessive and unreasonable force when he forcefully slammed an arrestee's face into a vehicle when the arrestee was handcuffed and subdued."[23] These cases are inapposite here because the

---

one. In *Graham*, the Supreme Court instructed courts to consider a case's facts and circumstances when determining whether the force used was objectively reasonable, "including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Further, it is well established that "the need for force determines how much force is constitutionally permissible." *Bush*, 513 F.3d at 501. The parties dispute the extent to which Abernathy posed a threat and to which he was actively resisting arrest, and it is not *obvious* in light of *Graham* that the force the officers used was excessive to the force necessary to subdue Abernathy.

[19] *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013).

[20] *Id.* at 379.

[21] *Id.* at 378 (emphasis added).

[22] *Id.* at 379 (quoting *Newman*, 703 F.3d at 763–64).

[23] *Id.* (citing *Bush*, 513 F.3d at 501).

uncontroverted evidence reflects that the officers in the instant case stopped using force on Abernathy once he was handcuffed.

The burden in this case is on the appellants to demonstrate the inapplicability of the qualified-immunity defense by showing, *inter alia*, that—under the specific facts of this case—the officers' use of force was objectively unreasonable in light of clearly established law.[24] But the appellants have made no showing that, under these facts, Abernathy's right to be free from excessive force was clearly established and thus have not satisfied their burden.[25] Therefore, we need not—and do not—reach the first prong of the qualified-immunity analysis.[26]

## IV.
### CONCLUSION

The district court's summary judgment dismissing this action with prejudice is AFFIRMED.[27]

---

[24] *Bush*, 513 F.3d at 501; *Atteberry*, 430 F.3d at 253; *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

[25] *See Cass v. City of Abilene*, 814 F.3d 721, 732 (5th Cir. 2016) (per curiam) ("Appellants . . . have the burden to show that Smith violated Cass's clearly established rights. Appellants' entire argument on this second prong of the qualified immunity test is that 'it is clearly established in the law that citizens are protected against unjustified, excessive police force.' This general statement is insufficient to meet Appellants' burden."); *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Saucier*, 533 U.S. at 201).

[26] *See Thompson*, 762 F.3d at 437.

[27] Our holding is limited to the circumstances of this case and is based solely on the appellants' failure to demonstrate that Abernathy's right to be free from the force used was *clearly established*. We note that an officer's repeated tasing of a non-dangerous, even non-compliant suspect could constitute a violation of the suspect's clearly established Fourth Amendment rights, especially given the advancing medical and scientific knowledge about the potential deadly effects of tasing.