# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 18, 2011

No. 11-30082

Lyle W. Cayce
Clerk

ANTHONY BROWN; MONIQUE BROWN, Individually and as the natural tutors of their minor child, Gavin Joseph Brown,

Plaintiffs–Appellees

v.

RODNEY J. STRAIN, JR.; BRYAN STEINERT

Defendants–Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Defendants–Appellants Rodney J. Strain Jr. and Bryan Steinert appeal the district court's order denying in part their motion for summary judgment. Because we lack jurisdiction, we dismiss the appeal.

## I.  BACKGROUND

Around 10:12 p.m. on February 18, 2008, St. Tammany Parish Deputy Bryan Steinert stopped a vehicle being driven by Anthony Brown.  During the course of the stop, Steinert searched the vehicle and discovered an empty pill bottle and a plastic bag containing cocaine residue.  Steinert arrested Brown and his two passengers, Billy Smith and Casey Lane, and placed them in the back

No. 11-30082

of the patrol car. Steinert also placed a digital voice recorder in the patrol car to record the suspects' conversation while he called and waited for a wrecker to tow Brown's vehicle.

While in the back of the patrol car, Brown moved his handcuffed hands from behind his back, took from Lane's underwear a plastic bag containing between five and nine grams of cocaine and at least one Soma pill (a prescription muscle relaxant), and swallowed them. Before leaving the scene, Steinert noticed that Brown had moved his hands to the front of his body, and he ordered Brown out of the patrol car to reset the handcuffs behind Brown's back.

Around 11:00 p.m., Steinert took the suspects to the nearby sheriff's annex in Slidell, Louisiana, where he listened to the audio recording of the suspects' conversation in the patrol car. From the recording, Steinert learned that one of the suspects had swallowed something, but claims that he was unable to determine exactly what was swallowed by whom. Brown maintains that the recording, which was somewhat difficult to hear, indicates only that one of the suspects was told to "swallow it" or "eat it" without identifying exactly what was to be swallowed. He admits hearing, however, that someone swallowed a Soma pill. A more thorough search of Lane at the annex revealed three additional pills hidden in her underwear, but no cocaine. Before leaving the annex, Steinert did not inquire if any of the suspects had ingested any substance or if any of them needed medical attention, and none of the suspects offered such information.

About two hours after arriving at the annex, Steinert left to drive the suspects to the jail in Covington, Louisiana, about 30 miles away. Exactly what happened during this drive is disputed.

Lane asserts that near the Interstate 12 exit for Lacombe, Louisiana—about halfway between the annex and the jail—she told Steinert that: Brown had swallowed a bag containing about eight grams of cocaine; he "was talking funny," "stuttering and slurring," "was real pale," and needed

2

medical attention; the jail would not admit or treat him if he arrived in a poor condition; and he needed "to go to the hospital." Smith asserts that a few miles before they reached the jail he told Steinert that: Brown was turning white, shaking badly, and stuttering; the jail would not accept a person who had something medically wrong with him; Steinert should have an ambulance waiting at the jail for them; and if Steinert did not go directly to the hospital, Brown "wasn't going to make it." They further assert that Steinert heard their statements, was able to see Brown shaking in the back seat of the patrol car through the rearview mirror, and was aware of Brown's condition before arriving at the jail, but that Steinert's only response was to partially "crack[] the windows" of the patrol car to give Brown some air and say that they would "be at the jail soon."

In contrast, Steinert asserts that he did not hear Lane's and Smith's statements, that he was never told that Brown swallowed a bag of cocaine and needed medical attention, and that he never became aware of Brown's condition until they arrived at the jail and he started helping Brown out of the patrol car. He claims that the first time he learned that Brown swallowed a bag of cocaine is when Lane told him such information after they arrived at the jail.

According to a video recording of the sally-port entrance to the jail, the patrol car arrived at 1:43 a.m. Steinert opened the rear patrol-car door and Brown tried to exit. Brown had difficulty balancing himself and Steinert grabbed hold of him to help steady him. Steinert waved for assistance at 1:44 a.m., and several other jail personnel came to assist. Brown soon collapsed and lay on the floor from 1:45 a.m. to 1:51 a.m., shaking frequently. An ambulance was called at some point during this period. Several jail nurses came with a wheelchair at 1:48 a.m. They checked for Brown's vital signs but performed no other medical procedures and left the area several minutes later but before the ambulance arrived. It is undisputed that medical equipment and materials

useful in treating drug overdoses were available, but none of the jail nurses on duty were qualified to use such equipment and the on-call physician was not called.  Brown was helped to a seated position at 1:51 a.m. and stayed there, shaking frequently, until 1:56 a.m., when an ambulance and paramedics arrived. Between 1:45 a.m. and 1:56 a.m., Steinert and other jail personnel stood around watching Brown but did not perform any medical procedures.  The paramedics checked Brown's vital signs, placed him on a gurney, and then placed him in the ambulance at 2:01 a.m.

The ambulance left the jail and headed for the hospital about three miles away at 2:09 a.m.  While in the ambulance, Brown suffered two heart attacks and his body temperature rose to 107 degrees.  This caused anoxic encephalopathy (a shortage of oxygen to the brain) and, ultimately, permanent brain damage.  Brown survived but is totally disabled and is currently being taken care of by his family, which includes his wife Monique and his minor son Gavin (collectively with Brown, "Plaintiffs").

Plaintiffs filed a civil action in the Eastern District of Louisiana on February 18, 2009, against St. Tammany Parish Sheriff Rodney Strain and Deputies Bryan Steinert, Julie Boynton, and Wayne Wicker, each in their individual and official capacities.  They brought claims for: (1) negligence under Louisiana state law; and (2) deliberate indifference based on the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983.  Defendants moved for summary judgment on all claims.  On December 13, 2010, the district court granted the motion for summary judgment in part and denied it in part.  The only three issues to survive summary judgment were the state-law negligence claim and the § 1983 claims against Steinert in his personal capacity and Strain in his official capacity.  Only the two § 1983 claims are currently before us.

No. 11-30082

## II.  JURISDICTION AND STANDARD OF REVIEW

"Although a denial of a defendant's motion for summary judgment is ordinarily not immediately appealable, the Supreme Court has held that the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).  Such an order is only immediately appealable, however, "to the extent that the district court's order turns on an issue of law." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

"The standard of review that we apply in an interlocutory appeal asserting qualified immunity differs from the standard employed in most appeals of summary judgment rulings."  *Kinney*, 367 F.3d at 347.  Because "in an interlocutory appeal we lack the power to review the district court's decision that a genuine factual dispute exists[,] . . . [we] consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Id.* at 348 (citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)).

## III.  APPLICABLE LAW

### A.    Qualified Immunity

"The doctrine of qualified immunity protects public officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  To determine whether a public official is entitled to qualified immunity, we inquire: "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* (citing *Pearson*, 555 U.S. at 815–16).  It is undisputed

5

that the right at issue—to receive medical care during pretrial confinement—was clearly established at the time of Steinert's alleged misconduct. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). A pretrial detainee's right to medical care is violated if "an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries." *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003). Thus, Steinert would not be entitled to qualified immunity if Plaintiffs had alleged facts showing that Steinert was deliberately indifferent to the substantial risk of medical harm Brown faced after ingesting the cocaine.

## B.    Plaintiffs' Constitutional Claims

"The appropriate standard to apply in analyzing constitutional challenges brought by pretrial detainees depends on whether the alleged unconstitutional conduct is a 'condition of confinement' or 'episodic act or omission.'" *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). This action is properly analyzed as an "episodic act or omission" case because Plaintiffs allege that Brown's constitutional rights were violated by Steinert's refusal to provide Brown with immediate medical treatment, which is "a particular act or omission of one or more officials." *Id.* at 769–70 (quoting *Scott*, 114 F.3d at 53) (internal quotation marks omitted). We apply the "deliberate indifference" standard in episodic act or omission cases. *Id.* at 769. Under that standard, Plaintiffs must establish that Steinert "acted with subjective deliberate indifference to [Brown's] need for medical care." *Id.* at 770. To show subjective deliberate indifference, Plaintiffs must present evidence: (1) that Steinert had "subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn"; (2) that Steinert "actually drew that inference"; and (3) that Steinert's response to the risk indicates that he "subjectively intended that harm to occur." *Id.* (internal quotation marks omitted).

No. 11-30082

## IV.  DISCUSSION

### A.    Plaintiffs' Claim Against Steinert

Whenever a "district court denies an official's motion for summary judgment predicated upon qualified immunity, the district court can be thought of as making two distinct determinations, even if only implicitly." *Kinney*, 367 F.3d at 346.  "First, the district court decides that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Id.*  Here, the district court explicitly determined that "[i]f Steinert had the knowledge that Mr. Brown needed urgent medical care, then . . . [his] refusal to provide Mr. Brown with medical care would be objectively unreasonable in light of established law." *Brown v. Strain*, No. 2:09-CV-2813, slip op. at 15 (E.D. La. Dec. 13, 2010).  Steinert does not appeal this determination.

"Second, the court decides that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Kinney*, 367 F.3d at 346.  "[W]e lack jurisdiction to review conclusions of the *second* type on interlocutory appeal."[1]  *Id.*  The district court determined that "[t]he evidence Plaintiffs provide establishes at least a genuine issue of material fact as to whether Steinert was aware that Mr. Brown had swallowed a large amount of cocaine and needed urgent medical care." *Brown*, slip op. at 13.  Steinert appealed this determination, which is precisely the type of factual conclusion we are without jurisdiction to review on interlocutory appeal.  *See Kinney*, 367 F.3d at 347 ("[W]e have jurisdiction only to decide whether the district court erred in

---

[1] Because of this limitation on our appellate jurisdiction, "officials may sometimes be required to proceed to trial even though the ultimate resolution of th[e] factual disputes may show that they are entitled to qualified immunity from liability." *Kinney*, 367 F.3d at 346 n.8.  While this "'threatens to undercut' the policy of affording immunity from trial, . . . 'countervailing considerations' nonetheless support this limitation on interlocutory jurisdiction." *Id.* (citing *Johnson v. Johnson*, 515 U.S. 304, 317–18 (1995)).

concluding as a matter of law that officials are not entitled to qualified immunity on a given set of facts." (emphasis added)).

Steinert disagrees with the district court about what inferences a jury could appropriately draw from the district court's factual findings.[2] He points to Brown's, Lane's, and Smith's various lies and deceptions during the course of their interactions with Steinert prior to the drive to the jail, and to Steinert's assertions of what he was aware of and when, as reasons why the district court erred in finding the alleged facts could support a finding of deliberate indifference. Steinert's arguments, however, are directed at the credibility of the witnesses and the truth of the facts alleged; they are not directed at whether the facts, taken as true, could legally support an inference of deliberate indifference by Steinert during the drive to the jail. Steinert gives no persuasive reason why Plaintiffs' allegations that he was aware that Brown had overdosed on cocaine and needed immediate medical treatment are legally insufficient to either support their claim or defeat his qualified immunity defense, which are analyzed using the same deliberate indifference standard. *See Tamez*, 589 F.3d at 771

---

[2] In its order denying summary judgment on this issue, the district court made the following findings:

> First, Steinert had initiated Mr. Brown's arrest based on the discovery of an empty bag of cocaine. Second, Steinert was aware that Mr. Brown had moved his hands to his front for some reason. Third, the recording Steinert listened to at the Slidell Complex suggested that one of the three arrestees had swallowed something. Fourth, Plaintiffs submit that they actually told Steinert that Mr. Brown had swallowed a quarter-ounce of cocaine and needed immediate medical attention. Fifth, Plaintiffs have produced numerous depositions that indicate that Sheriff Strain's deputies knew that the Covington jail would refuse medical treatment of arrestees that had pre-existing illnesses or injuries. Finally, the video of the Covington jail shows quite clearly that Mr. Brown was already in a medical emergency upon arrival at the sally port, so it is unlikely that he was not exhibiting some symptoms of overdose during the ride to the jail. Based on this evidence a rational jury could conclude that Steinert had drawn the inference that Mr. Brown needed to be taken to the hospital and that he intended on denying Mr. Brown the care he required by continuing to the jail, where Mr. Brown would not receive treatment.

*Brown*, slip op. at 13–14.

No. 11-30082

(stating that had the defendant officials been told to take the plaintiff to the hospital and failed to do so, "the case would be different"). Accordingly, Steinert's appeal is dismissed for lack of jurisdiction.

**B.    Plaintiffs' Claim Against Strain**

For different reasons, we lack jurisdiction to review the district court's order with respect to Plaintiffs' claim against Strain. Because Strain is being sued in his official capacity as St. Tammany Parish Sheriff, the suit against him is "in essence" a suit against a municipality. *See Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "Municipal governments may not raise immunity defenses on interlocutory appeal." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 392 (5th Cir. 2000).

Acknowledging this jurisdictional hurdle, Strain urges us to exercise "pendent appellate jurisdiction" over the district court's order with respect to Plaintiffs' claim against him. "[I]n rare and unique circumstances where a final appealable order is 'inextricably intertwined' with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order," we may exercise pendent appellate jurisdiction. *Byrum v. Landreth*, 566 F.3d 442, 449–50 (5th Cir. 2009) (quoting *Thornton v. GM*, 136 F.3d 450, 453 (5th Cir. 1998)). Because we lack jurisdiction over Steinert's appeal, however, there is no appealable order to which Strain's appeal can be pendent. Accordingly, it too is dismissed for lack of jurisdiction

**CONCLUSION**

Appellants' appeal is DISMISSED for lack of jurisdiction.

9