# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41233
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 2, 2016

Lyle W. Cayce
Clerk

JAMES MORROW,

Plaintiff–Appellee,

v.

BARRY WASHINGTON,

Defendant–Appellant;

---

WILLIAM PARSONS; JAVIER FLORES,

Plaintiffs–Appellees,

v.

BARRY WASHINGTON,

Defendant–Appellant;

---

DALE AGOSTINI,

Plaintiff–Appellee,

v.

BARRY WASHINGTON, City of Tenaha Deputy City Marshal, in his
Individual and Official Capacity,

No. 15-41233

Defendant–Appellant;

------------------------------------------------------------------------

JAMIE ROBERT JARRETT; IGNACIO MANUEL DELACRUZ,

Plaintiffs–Appellees,

v.

BARRY WASHINGTON,

Defendant–Appellant.

--------------------

Appeal from the United States District Court
for the Eastern District of Texas
USDC Nos. 2:11-CV-467; 2:11-CV-499; 2:12-CV-256; 2:12-CV-497

--------------------

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Barry Washington appeals the district court's denial of his motion for summary judgment on the grounds of qualified immunity. Because the district court potentially relied exclusively on impermissible evidence in denying Washington qualified immunity on Plaintiffs' Fourth Amendment claims, we remand the case to the district court for further proceedings not inconsistent with this opinion.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 15-41233

I

This suit arises from four separate traffic stops and ensuing detentions, searches, seizures, and arrests that occurred in Shelby County, Texas.[1] Plaintiffs claim that Washington, Deputy City Marshall for the City of Tenaha, Texas, along with other local officials, conspired to develop a "stop and seize" practice, or "interdiction program" designed to target motorists on the basis of their race, and to seize funds from such motorists to "enrich [defendants] and/or their offices."  At this juncture, only Washington remains a defendant; all other defendants have settled their claims.

Plaintiffs present three claims for monetary relief against Washington: (1) a 42 U.S.C. § 1983 claim for violating their right to be free from unreasonable searches and seizures under the Fourth Amendment, (2) a § 1983 claim for violating their Fourteenth Amendment rights to equal protection of the law, and (3) a § 1985(3) claim alleging that the officials conspired, via the interdiction program, to racially profile motorists and to seize motorists' valuables to "enrich themselves and/or their offices."  To the extent Washington was not an active participant during a particular stop, Plaintiffs allege that he can be held liable via his role as a conspirator in the interdiction program.

Plaintiffs' actions were consolidated for pretrial purposes and referred to a magistrate.  Washington then moved for summary judgment on grounds of

---

[1] Plaintiffs initially filed suit alongside numerous other motorists in *Morrow v. Washington et al.* (*Morrow I*), alleging that local officials conspired to develop an interdiction program that racially profiled motorists in violation of the Fourth and Fourteenth Amendments.  *See Morrow I*, 277 F.R.D. 172, 178 (E.D. Tex. 2011).  After the district court in *Morrow I* certified a class for injunctive relief but denied class treatment for claims for damages, *see id.* at 202-03, Plaintiffs filed individual actions seeking monetary relief; it is these actions that form the subject of this appeal.

qualified immunity as to all four consolidated actions, citing law pertinent only to Plaintiffs' Fourth Amendment claims.

At a hearing on the motions, the magistrate queried why Washington's motion was styled as a full summary judgment motion, yet neglected to address Plaintiffs' conspiracy and Fourteenth Amendment allegations. Washington's counsel responded that the conspiracy allegations were not material in determining whether Plaintiffs had alleged violations under the Fourth Amendment. He further opined that Plaintiffs could not show Fourth Amendment violations under the objective reasonableness standard, and that failure would preclude their equal protection claim.

After the parties submitted supplemental briefing, the magistrate denied Washington qualified immunity. Though the magistrate did not explicitly identify which claims it intended to address, the report and recommendation issued by the magistrate (the R&R) appears limited to Plaintiffs' Fourth Amendment claims and corresponding § 1983 conspiracy allegations.

In a brief order, the district court adopted the magistrate's conclusions. This interlocutory appeal followed.

## II

This court may immediately review the denial of a motion for summary judgment based on qualified immunity "to the extent that it turns on an issue of law."[2] Though we lack jurisdiction to review the district court's determination that genuine issues of fact exist, we may "address the legal question of whether the genuinely disputed factual issues are material for the purposes of summary judgment."[3] We review the district court's resolution of

---

[2] *Lytle v. Bexar Cty.*, 560 F.3d 404, 408 (5th Cir. 2009) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004)).

[3] *Id.*

such legal issues de novo.[4]  In conducting our review, we are "required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."[5]

### III

Given the ambiguity surrounding the scope of Washington's summary judgment motion and the magistrate's R&R, we begin our analysis by detailing the scope of this appeal.  In his reply brief, Washington clarifies that his summary judgment motion was limited to Plaintiffs' Fourth Amendment claims and he "appeal[s] the denial of qualified immunity only with respect to the Fourth Amendment claims and the conspiracy claims insofar as they relate to alleged violations of the Fourth Amendment."

Qualified immunity protects government officials to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[6]  In resolving claims of qualified immunity this court asks "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct."[7]

Washington argues that the magistrate impermissibly relied on evidence illustrative of the subjective intentions of the officers, which, while perhaps relevant to the conspiracy allegations and equal protection claims, are not material in determining whether Plaintiffs put forth evidence of Fourth Amendment violations of clearly established law.  If Washington is correct, the district court erred.

---

[4] *Id.* at 409.

[5] *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[6] *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (quoting *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)).

[7] *Id.* (quoting *Brown*, 663 F.3d at 249).

No. 15-41233

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'"[8]  In the qualified immunity context, courts must "first . . . determine the objective reasonableness of the state action which is alleged to have caused harm to the plaintiff."[9]  Only if that action was not objectively reasonable should the court then "look to whether the officer's actions were taken pursuant to a conspiracy."[10]  If all defendants "alleged to have violated [a plaintiff's rights] are entitled to qualified immunity . . . [,] the conspiracy claim is not actionable."[11]

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"[12]  In conducting a Fourth Amendment inquiry, "[w]e ask whether the circumstances, viewed objectively, justify [the challenged] action . . . [,] *whatever* the subjective intent motivating the relevant officials."[13]

As indicated above, in a case alleging both Fourth Amendment violations and a § 1983 conspiracy, the proper order of review is *first* whether Plaintiffs' have alleged a constitutional violation that is objectively unreasonable in light

---

[8] *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992)).

[9] *Pfannstiel*, 918 F.2d at 1187; *see also Hill v. City of Seven Points*, 31 F. App'x 835, *8 (5th Cir. 2002).

[10] *Pfannstiel*, 918 F.2d at 1187; *see also Hill*, 31 F. App'x at *8.

[11] *Hale*, 45 F.3d at 921.

[12] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[13] *Id.* (citations and internal quotations omitted); *United States v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005) ("[T]he Court . . . has made clear that an officer's subjective motivations are irrelevant in determining whether his or her conduct violated the Fourth Amendment."); *Goodwin v. Johnson*, 132 F.3d 162, 173 (5th Cir. 1998) ("So long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment.").

of clearly established Fourth Amendment law, and *only if that is the case* should the court then consider whether Plaintiffs have alleged a conspiracy. The conspiracy allegations, and any appendant evidence of subjective intent, do not inform factual analysis respecting alleged Fourth Amendment violations in these specific stops. The pertinent threshold question remains whether material fact disputes exist to support a violation of Fourth Amendment law under the objective reasonableness standard.

This analytical structure is not altered by the fact that Plaintiffs also allege equal protection claims, which provide a separate cause of action and corresponding analysis.[14]  The Supreme Court made the distinction between Fourth Amendment and Equal Protection claims clear in *United States v. Whren*—

> We think [precedent] foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved. We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.[15]

---

[14] *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533 (6th Cir. 2002) (stating that the Supreme Court has "confirmed that an officer's discriminatory motivations for pursuing a course of action can give rise to an Equal Protection claim, even where there are sufficient objective indicia of suspicion to justify the officer's actions under the Fourth Amendment"); *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002) ("The fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected for a search [in violation of the Fourteenth Amendment's equal protection guarantee]."); *United States v. Miller*, 146 F.3d 274, 279 n.3 (5th Cir. 1998) ("[A]s the *Whren* Court makes clear, the leeway allowed regarding subjective intent [in the Fourth Amendment context] does not protect any discriminatory application of laws that would violate the Fourteenth Amendment.").

[15] *Whren v. United States*, 517 U.S. 806, 813 (1996).

No. 15-41233

Upon a review of the magistrate's R&R, adopted by the district court, we are unable to ascertain whether the magistrate impermissibly considered the officers' alleged subjective intent to conclude that material fact disputes existed regarding violations of clearly established Fourth Amendment law.

In the R&R, the magistrate detailed each party's version of events for each stop. In several of the accounts, the magistrate cited "statistical evidence" offered by Plaintiffs bearing on the officers' alleged intent to racially profile motorists. This statistical evidence, as presented in Plaintiffs' responses to Washington's motions for summary judgment, demonstrates that minority motorists were stopped at a substantially greater rate as a result of the interdiction program. It is notable that Plaintiffs offered this evidence in conjunction with their Fourteenth Amendment claims.

The magistrate also cited evidence reflective of subjective intent in his legal analysis of the Fourth Amendment claims. The magistrate opined:

> There is ample evidence in this record to lead a reasonable juror to find that Washington, and his alleged co-conspirator Whatley, made these stops without any factual basis, but rather to pull over cars they felt might have cash or contraband based on the appearance of the motorists. The fact that Washington did not have a working video camera in his patrol car, that he picked obscure violations as his reasons to stop the cars, that he acknowledged an intent to seize as much cash as possible, and that his charges were dismissed whenever they faced the possibility of actually going to court, all support such a conclusion. These concerns are buttressed by the statistical evidence and the expert report concerning the shortcomings of the K-9 evidence.
>
> In addition to Plaintiff's evidence of a conspiracy, the Plaintiffs present evidence contradicting the version of the facts set forth by Washington and Whatley. There are clear fact disputes about the true basis for the stops, the later development of probable cause for the searches, and whether any evidence supported the arrests and seizures relating to each of the Plaintiffs.

It appears that the magistrate's summary of the conspiracy allegations encompasses evidence of the officers' purported subjective intent. Further, it appears intended to buttress the magistrate's determination that factual disputes pertaining to a Fourth Amendment violation exist, not merely that liability can be extended to Washington for violations committed by other officers only *after* determining that Fourth Amendment liability could be found.

The magistrate's statement that "[t]here are clear fact disputes about the true basis" for the stops, searches, arrests, and seizures could have been intended to acknowledge fact disputes untethered to the officers' subjective intentions. But while the magistrate specified factual disputes relevant to *conspiracy*, it was merely conclusory as to whether the Plaintiffs disputed the officers' arguments that their conduct was objectively grounded. We have held that when a district court does not identify the factual disputes it found relevant, this court may remand the case for clarification.[16] We choose to do so here.

It may be the case, on remand, that any error in considering the officers' subjective motivations is harmless insofar as Plaintiffs have raised a factual dispute regarding the alleged Fourth Amendment violations even absent evidence of the officers' subjective intent. We leave this inquiry to the district court and express no view on the proper outcome.

Given that Washington does not seek qualified immunity on the equal protection or the § 1985 conspiracy claims, the district court's review should be limited to whether Plaintiffs have alleged violations of clearly established Fourth Amendment law sufficient to defeat summary judgment based on qualified immunity. The only factual disputes material to that analysis are

---

[16] *See Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001).

those reflecting a dispute as to the officers' proffered reasons for each stop, detention, search, seizure and arrest, without reference to whether the officers' justifications constitute mere pretext.

We further advise that the district court consider whether it is disputed that probable cause existed at each stage of the officers' dealings with the Plaintiffs. For example, Washington may be entitled to qualified immunity for a search or a subsequent seizure of funds, notwithstanding a determination that qualified immunity would not be appropriate for the initial stop. This principle derives from our prior rejection of the exclusionary rule in the civil context.[17]

We note for clarity that the district court's resolution of qualified immunity on the Fourth Amendment claims should have no bearing on the viability of Plaintiffs' Fourteenth Amendment claims.[18]

\* \* \*

This case is remanded to the district court for further proceedings not inconsistent with this opinion.

---

[17] *See Wren v. Towe*, 130 F.3d 1154, 1158-60 (5th Cir. 1997) (holding that officers were entitled to qualified immunity for the seizure of a vehicle based on evidence found in the vehicle, even assuming the search of that vehicle was unlawful); *see also Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers.").

[18] *See supra* n.14.