# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20223
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2018

Lyle W. Cayce
Clerk

UYLESS L. JONES,

      Plaintiff - Appellant

v.

CITY OF HOUSTON; CIVIL SERVICE COMMISSION FOR MUNICIPAL
EMPLOYEES OF THE CITY OF HOUSTON; TODD JOHNSON; TOM
SORELY,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-3051

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

      Plaintiff Uyless Jones, a municipal employee for the City of Houston (the "City"), appeals the district court's orders dismissing his numerous claims against the City, his supervisors, and the Civil Service Commission for Municipal Employees of the City of Houston. Jones, who is black, alleges that

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20223

his supervisors racially discriminated against him and then retaliated against him for internally complaining about the discrimination.

We agree with most of the district court's order. But we conclude the district court erred in holding that Jones failed to timely exhaust part of his state-law race-discrimination claim. Accordingly, we REVERSE in part and AFFIRM in part.

## I.

We draw the following facts from Jones's complaint and the attachments incorporated therein.

During all relevant times, the City employed Jones as a technical hardware analyst in the radio division of its information-technology department. Defendant Todd Johnson directly supervised Jones, while defendant Thomas Sorely supervised Johnson. Jones's claims involve several discrete allegations against Johnson and Sorely.

First, Jones alleges that between November 2013 and May 2014, Johnson—with Sorely's approval—required Jones to cut the grass surrounding various radio towers. He further asserts that Johnson allowed the white members of his staff to skirt their assigned landscaping duties. In either March or April of 2014, Jones filed an internal complaint with the City alleging that Johnson was racially discriminating against him by singling him out to perform manual labor and subjecting him to harassment and other disparate treatment. The City responded to Jones's complaint in February 2015. It sustained Jones's allegation that Johnson subjected him to unequal landscaping duties from November 2013 through May 2014. But it found insufficient evidence to support Johnson's other various allegations.

Separately, while Jones's internal complaint was pending, he and a group of his colleagues reported to a number of City higher-ups, including the mayor, that they did not have the equipment needed to properly perform their

2

jobs. Specifically, Jones says that he and his colleagues were tasked with testing certain communications systems for the fire department in response to a fatal fire. But he says the City did not provide them with the proper equipment to run these tests, risking inaccurate results. Jones alleges that Johnson—again with Sorely's approval—officially reprimanded Jones and his whistleblowing colleagues. Jones says that he and the other whistleblowers were eventually cleared of wrongdoing. But he alleges that his white colleagues were all exonerated before he was.

Jones additionally alleges that Sorely continued to retaliate against him after he initiated the present litigation. Jones says that in January 2016, Sorely ordered him to submit to a drug test and placed him on paid leave pending the results.[1] Jones asserts that City policy only permits drug tests to be administered for reasonable suspicion of drug use. But he says Sorely never provided any basis for ordering the test. Then, Jones alleges that when his test came back negative and he returned from leave, Johnson demoted him "to a role of 'handy-man.'"

Jones filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 24, 2014. In the charge, he alleged the City racially discriminated against him, citing his grass-cutting duties and reprimand for whistleblowing. In its response, the City acknowledged that Johnson discriminated against Jones by assigning him to cut the grass around the radio towers but assured that it took remedial action to resolve the situation.

---

[1] In Paragraph 43 of his operative complaint, Jones indicates that this incident took place in January 2015. This appears to be a scrivener's error. Also in Paragraph 43, he suggests that the drug test took place during the pendency of the current litigation, which did not commence until September 2016. Further, in Paragraph 54 he refers to the drug test as having taken place in January 2016. In any event, the date of the drug test is not relevant to our present analysis.

No. 18-20223

Jones's attorney sent the EEOC a letter of representation on May 25, 2015. Three days later, an EEOC investigator notified Jones's attorney that a right-to-sue letter was forthcoming. Then on June 1, the EEOC sent Jones the right-to-sue letter but did not send a copy to his attorney. Jones then filed the present lawsuit in state court on September 18, 2015, which the defendants subsequently removed to the federal district court.

Jones asserted ten general causes of action in his operative complaint: (1) a Title VII claim for retaliation; (2) a 42 U.S.C. § 1981 claim for hostile work environment; (3) a 42 U.S.C. § 1983 claim for various constitutional violations relating to the January 2016 drug test; (4) a § 1983 claim for First Amendment retaliation; (5) a Texas Commission on Human Rights Act ("TCHRA") claim for racial discrimination and retaliation; (6) a 42 U.S.C. § 1985 claim for conspiracy to violate his civil rights; (7) a Texas Whistleblower Act claim for retaliation; (8) a common-law slander claim; (9) a common-law "[m]isrpresentation/[f]raud/[p]romissory estoppel" claim; and (10) a common-law intentional-infliction-of-emotional-distress claim.

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court granted the motion in respect to all of Jones's claims except for his TCHRA retaliation claim against the City. It subsequently granted the City's motion for summary judgment on the remnants of Jones's TCHRA claim and entered final judgment. Jones appeals.

## II.

We review orders dismissing complaints under Rule 12(b)(6) de novo and apply the same standard as the district court. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). That is, we accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *See id.* "We affirm the district court's grant of a motion to dismiss

'when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) (quoting *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To conduct this analysis, we look to "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

## A.

Jones first argues that the district court erred in dismissing his claim under the TCHRA—Texas's Title VII analog—as untimely. Prior to suing under the TCHRA, "Texas law requires that a complaint of unlawful employment practices be filed with the Equal Employment Opportunity Commission or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred." *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *see also* Tex. Labor Code Ann. § 21.202(a). This limitations period begins to run "when the employee is informed of the allegedly discriminatory employment decision." *Specialty Retailers*, 933 S.W.2d at 493.

The district court concluded that Jones did not timely complain to the EEOC about the discriminatory landscaping duties. It explained:

> Plaintiff filed his Charge with the EEOC on November 24, 2014, alleging discrimination based on the unequal grass-cutting

assignment and retaliation for reporting the discrimination. Although Plaintiff does not specify when he was made to cut grass, he does allege that he filed his first formal complaint about it in "March and/or April of 2014." Thus, assuming that the incident did not occur until the last day of April, more than 180 days passed between the time Plaintiff was assigned to cut the grass and the time when Plaintiff filed his November 24, 2014 Charge. Accordingly, Plaintiff's TCHRA claim based on the grass-cutting assignment is untimely and subject to dismissal.

The district court overlooked a few pertinent aspects of Jones's pleadings. First, Jones's EEOC charge, which he attached to and explicitly incorporated into his complaint, alleges the discrimination took place between August 27, 2012, and November 24, 2014, the date he filed the charge. Although the charge does not specify whether he was subject to the discriminatory grass-cutting assignment specifically through November 24, 2014, it is reasonable to infer that he was. Drawing this inference, we conclude that the most recent discriminatory act occurred well within the limitations period. *See Villarreal*, 814 F.3d at 766.

But even assuming Jones's allegations in the EEOC charge are not specific enough to show he was subject to the grass-cutting assignment within the limitations period, we alternatively infer the discrimination ended on May 31, 2014, which still falls within the limitations period. Jones pleaded on the face of his complaint that the City inspector general found he was subject to the discriminatory grass-cutting assignment "between November 2013 and May 2014." Jones further attached the inspector general's letter, which corroborates this allegation, and the City's EEOC response, which repeats the inspector general's conclusion. Indeed, in the background section of its order, the district court even quoted the inspector general's conclusion that Jones was subject to "the unequal grass-cutting assignment for the period of November 2013 through May 2014."

No. 18-20223

Accordingly, Jones sufficiently alleges that—at the earliest—his grass-cutting duties ended May 31, 2014. And taking this allegation as true, the limitations period expired on November 27, 2014—three days *after* Jones filed his November 24 EEOC charge. Therefore, we reverse the portion of the district court's order dismissing Jones's grass-cutting TCHRA claim as untimely.

## B.

Jones next argues that the district court erred in dismissing his §§ 1981 and 1983 claims. We analyze these claims together because they all suffer the same flaw: to the extent Jones asserts his claims against the municipal and official-capacity defendants, he fails to allege sufficient facts to show liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[2] And to the extent he asserts his claims against Johnson and Sorely in their individual capacities, he fails to meet his burden to overcome the defendants' qualified immunity.[3]

## 1.

In *Monell*, the Supreme Court held that § 1983 does not allow municipal governments to be held liable for their employees' actions under a respondeat superior theory. *See* 436 U.S. at 694. Rather, the Court explained that a § 1983 claim is only actionable against a municipal government "when execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.*; *see also Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) ("To establish municipal liability under § 1983, a plaintiff must show

---

[2] We treat suits against municipal officials in their official capacities as suits against the municipality itself. *See Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011).

[3] It is not entirely clear from Jones's operative complaint whether he intended to sue Johnson and Sorely in their official capacities, individual capacities, or both. The district court appeared to assume he intended to sue them in both their official and individual capacities. We do the same.

that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."). The Court subsequently extended *Monell*'s requirements to § 1981 claims against municipal employers. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989).

The district court dismissed Jones's §§ 1981 and 1983 claims against the municipal and official-capacity defendants because it concluded that Jones failed to plead that any municipal policy or custom was the "moving force behind" any of the alleged violations. *Peterson*, 588 F.3d at 847. We agree. In his pleadings below and in his brief on appeal, Jones fails to point to a single policy or custom responsible for his alleged harms. Indeed, at multiple points in his complaint, he appears to allege that Johnson and Sorely *violated* municipal policy with their various wrongdoings.[4] We therefore conclude Jones's §§ 1981 and 1983 claims against the municipal and official-capacity defendants fail to state a claim.[5]

---

[4] For example, in Paragraph 22 of his operative complaint, Jones states that the City "strictly prohibits discrimination in employment and employment opportunities on the basis of any protected category."

[5] Jones argues the district court erred in dismissing his § 1981 claims against the municipal and official-capacity defendants because it erroneously concluded that § 1981 does not create an independent cause of action for claims against a municipal employer. Jones appears to misapprehend the district court's analysis. True, the district court did hold that Jones could not state an independent § 1981 claim against the municipal and official-capacity defendants—correctly so under the law of this circuit. See *Oden v. Oktibbeha Cty.*, 246 F.3d 458, 464 (5th Cir. 2001). But it also "liberally construe[d] [Jones]'s § 1981 claim against the [municipal and official-capacity defendants] as having also been pled under [Jones]'s § 1983 claims." Thus, even if we could disregard our precedent and consider Jones's § 1981 claims as stating independent causes of action instead of considering them as part of his § 1983 claims, these claims would still fail for want of municipal policy or custom.

Although it is not clear from his brief, it is possible that Jones means to argue that if he could state an independent § 1981 claim, then he would not need to meet *Monell*'s requirements. Essentially, Jones says that Congress abrogated *Jett* when it amended § 1981 in 1991. But even to the extent that these amendments overrode *Jett*'s holding that § 1981 claims against municipal employers must be brought through § 1983—the very argument we rejected in *Oden*, *see* 246 F.3d at 464—it does not necessarily follow that the amendments also overrode *Jett*'s holding that *Monell* applies to § 1981 suits. The Ninth Circuit case that

**2.**

Government officials enjoy qualified immunity from personal liability for harms they commit in performing the discretionary functions of their jobs. *See Haverda v. Hays Cty.*, 723 F.3d 586, 598 (5th Cir. 2013). Thus, they may only be held liable if clearly established law would put a reasonable official on notice that the particular conduct at issue was unlawful. *See Mote v. Walthall*, ---F.3d---, 2018 WL 4215089, at *4 (5th Cir. Aug. 31, 2018); *see also Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) ("To say that the law was clearly established, 'we must be able to point to controlling authority—or a "robust consensus of persuasive authority"—that defines the contours of the right in question with a high degree of particularity.'" (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc))). The Supreme Court has repeatedly warned us not to conduct the clearly-established-law analysis at too high a level of generality. *See, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) ("This Court has 'repeatedly told courts . . . not to define clearly established law at a high level of generality.'" (quoting *City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015))); *White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))). When a public official pleads qualified immunity, the plaintiff bears the burden of citing authority that clearly establishes the unlawfulness of the alleged violation. *See Wyatt v. Fletcher*, 718 F.3d 496, 510 n.19 (5th Cir. 2013).

The district court dismissed Jones's §§ 1981 and 1983 claims against Johnson and Sorely in their individual capacities because it determined that

---

Jones relies on says as much. *See Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996) (concluding "that the amendment to 42 U.S.C. § 1981 preserves the 'policy or custom' requirement in suits against state actors").

he did not carry his burden to overcome their assertions of qualified immunity. On appeal, Jones recounts facts from his pleadings that he insists "negat[e] Johnson and Sorely's qualified immunity defense." But he fails to cite any authority clearly establishing that Johnson and Sorely acted unlawfully. At most, the scattered authority Jones does cite clearly establishes that §§ 1981 and 1983 prohibit racial discrimination and retaliation in employment and that § 1981 claims are cognizable against government officials in their individual capacities.[6] But it is not enough that the law is clearly established at such high levels of generality. *See, e.g.*, *White*, 137 S. Ct at 552. And because Jones makes no attempt to show why Johnson and Sorely should have known their particular conduct was unlawful, we conclude he fails to carry his burden to overcome the defendants' qualified immunity. *Cf. Linicomn v. Hill*, ---F.3d---, 2018 WL 4214979, at *5 (5th Cir. Sept. 5, 2018) (affirming grant of qualified immunity because plaintiff "d[id] not cite to any controlling authority establishing that the [defendants' alleged conduct] would have violated a clearly established right under the circumstances").

In sum, Jones's §§ 1981 and 1983 claims all fail because he does not carry his burdens to (1) allege municipal liability and (2) overcome qualified immunity. Accordingly, we affirm the district court's dismissal of these claims.

## C.

Jones lastly argues that the district court erred in dismissing his Title VII claim as untimely. Title VII requires plaintiffs to exhaust their administrative remedies by filing an EEOC charge prior to bringing suit. *See*

---

[6] Like the district court, we do not actually decide whether § 1981 claims are cognizable against government officials in their individual capacities. *See Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 338 (5th Cir. 2003) (recognizing "tension" in our § 1981 caselaw "with respect to the liability of individual defendants who are not parties to the employment contract"). Assuming they are, Jones fails to show that Johnson and Sorely should have known their conduct violated § 1981.

No. 18-20223

42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). If the EEOC fails to resolve the dispute and chooses not to bring suit itself, then it must notify the plaintiff of its decision. *See* § 2000e-5(f)(1); *Taylor*, 296 F.3d at 379. Upon receiving such notice from the EEOC—often referred to as a "right-to-sue letter"[7]—the plaintiff then has 90 days to file a lawsuit. § 2000e-5(f)(1); *Taylor*, 296 F.3d at 379. Failure to meet this limitations period generally warrants dismissal. *See Taylor*, 296 F.3d at 379.

Jones concedes that he filed the present lawsuit more than 90 days after receiving his right-to-sue letter. But he nevertheless argues that the district court should have equitably tolled the limitations period because the EEOC failed to send the right-to-sue letter to his attorney.

Under certain circumstances, courts may equitably toll Title VII's 90-day limitations period. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). The district court has discretion to grant or deny equitable tolling, so we review its decision for abuse of discretion. *See Granger v. Aaron's Inc.*, 636 F.3d 708, 712 (5th Cir. 2011). We have allowed tolling in Title VII actions when (1) the plaintiff timely filed suit in the wrong forum; (2) the defendant intentionally concealed the facts giving rise to the lawsuit; (3) the EEOC misleads the plaintiff about his rights; and (4) "a plaintiff has actively pursued judicial remedies but filed a defective pleading." *Id.* (quoting *Perez v. United States*, 167 F.3d 913, 917 (5th Cir. 1999)). We also take into account (1) whether the plaintiff acted diligently; (2) whether the delay prejudiced the defendant; and (3) the balance of equities. *See id.* at 712-13.

We conclude that the district court acted within its discretion in denying Jones's equitable tolling request. This case does not neatly fit in any of the categories that we have previously recognized as warranting tolling. Although

---

[7] *E.g.*, *Welsh v. Fort Bend Indep. Sch. Dist.*, 860 F.3d 762, 763 (5th Cir. 2017).

Jones argues that an EEOC investigator misled his attorney by failing to send the attorney Jones's right-to-sue letter in violation of its own policies, the district court appropriately concluded this was not the kind of deceit that warrants tolling. Typically, tolling is only appropriate in such cases "when an employee seeks information from the EEOC, and the organization gives the individual *incorrect information* that leads the individual to file an untimely charge." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). Jones does not allege that the EEOC investigator provided any incorrect information to his attorney that led to the untimely filing.[8]

Further, neither Jones nor his attorney acted with particular diligence. Jones does not dispute that he personally received the right-to-sue letter, which stated in capitalized, bold, and underlined font that Jones had 90 days from the receipt of that letter to file a lawsuit. And just days before sending Jones the right-to-sue letter, an EEOC investigator suggested to Jones's attorney that the EEOC would soon send the letter. Had Jones's attorney exercised true diligence, she would have followed-up with either Jones or the EEOC at some point in the following ninety days to ascertain whether the EEOC had in fact sent the letter. Accordingly, we affirm the district court's dismissal of Jones's Title VII claim.

**D.**

To the extent that Jones intends to appeal the district court's dismissal of his § 1985 claim, his Texas Whistleblower Act claims, his three common-law

---

[8] On appeal, Jones insists that the EEOC investigator told Jones's attorney she would send the attorney a copy of the right to sue letter. But Jones does not make any such allegation in his complaint. Nor does the correspondence Jones attached to his complaint support this assertion. Rather, in the only attached communication from any EEOC official to Jones's attorney prior to the commencement of this lawsuit, the EEOC investigator told Jones's attorney that a recommendation had been made for "a [d]ismissal and [n]otice of [r]ight to [s]ue be issued." The investigator did not represent that such a notice would be sent to Jones's attorney.

claims, or the parts of his TCHRA claim that survived to summary judgment, we do not consider these issues. Although Jones broadly insists the district court erred in dismissing "virtually all of his claims," he does not advance any specific argument about why the district court erred in dismissing these particular claims. It is not clear whether he intends to relinquish these claims, but we conclude he has relinquished them regardless. *See McClendon v. United States*, 892 F.3d 775, 784 (5th Cir. 2018) ("Because [the appellant] fails to identify any error in the district court's legal analysis on this issue, it 'is the same as if he had not appealed that [part of the] judgment'" (second alteration in original) (quoting *Brinkmann v. Dall. Cty. Deputy Abner*, 813 F.2d 744, 748 (5th Cir. 1987))). Accordingly, we affirm the district court's dismissal of these claims.

## III.

As a final matter, we conclude that the district court did not abuse its discretion in denying Jones's motion to amend. *See Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) (reviewing order denying motion to amend for abuse of discretion). The district court explained that (1) it granted Jones's two prior motions to amend; (2) it warned Jones that it would not provide him with further opportunities to amend; and (3) Jones did not attach a proposed amended complaint or explain the changes he would make. These considerations are valid. *See id.* (explaining that in considering a motion to amend, the district court "may consider a variety of factors including . . . 'repeated failures to cure deficiencies by amendments previously allowed'" (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004))); *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."

No. 18-20223

(alteration in original) (citation omitted) (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993))).

**IV.**

For the foregoing reasons, we REVERSE the portion of the district court's judgment to the extent it dismissed Jones's TCHRA claims relating to his landscaping duties, but we otherwise AFFIRM. Each party shall bear its own costs.